# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DENIS RIVERA, a/k/a Conejo,
*Defendant-Appellant.*

No. 04-4149

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

NOE DAVID RAMIREZ-GUARDADO,
a/k/a Tricky,
*Defendant-Appellant.*

No. 04-4150

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-02-376)

Argued: February 4, 2005

Decided: June 23, 2005

Before WILKINS, Chief Judge, and KING and
DUNCAN, Circuit Judges.

---

Affirmed by published opinion. Judge Duncan wrote the opinion, in
which Chief Judge Wilkins and Judge King joined.

---

**COUNSEL**

**ARGUED:** John Cady Kiyonaga, KIYONAGA & KIYONAGA, Alexandria, Virginia; Jerome Patrick Aquino, Alexandria, Virginia, for Appellants. Ronald L. Walutes, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Michael E. Rich, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

DUNCAN, Circuit Judge:

Defendants-Appellants, Denis Rivera and Noe David Ramirez-Guardado, appeal their convictions after jury trial for conspiracy to commit premeditated murder in violation of 18 U.S.C. § 1117 and premeditated murder in violation of 18 U.S.C. §§ 2 and 1111. Primarily, Rivera argues that the district court erred in admitting at trial the out-of-court statements of a murdered witness, and in refusing to allow him to examine the detectives who were investigating the witness's murder. Ramirez-Guardado argues that the district court erred in denying his motion to sever his trial from Rivera's. For the reasons that follow, we affirm both convictions.

I.

A.

Rivera, Ramirez-Guardado, and co-defendant Luis Cartenga[1] were arraigned on a two-count indictment charging conspiracy to commit premeditated murder and the premeditated murder of Joaquin Diaz. Evidence presented at trial established that Rivera and Ramirez-Guardado were members of the gang Mara Salvatrucha ("MS-13").

---

[1]Cartagena was acquitted at trial and is not a party to this appeal.

Rivera and Ramirez-Guardado, along with other MS-13 members, decided to kill Diaz because he was a member of a rival gang.[2]

To that end, Ramirez-Guardado ordered several MS-13 members, including Rivera, to drive Diaz to a local park. When the group arrived at the park, the MS-13 members stabbed Diaz as he begged for his life and attempted to defend himself. After the initial attack, Rivera noticed that Diaz was still moving and cut his throat with a steak knife.

## B.

Prior to trial, the district court heard argument and ruled on several motions, the dispositions of which form the basis of this appeal. We set them forth below, beginning with the government's motion regarding the out-of-court statements.

During its trial preparation, the government interviewed Brenda Paz, a former girlfriend of Rivera. Paz was questioned in the presence of her court appointed guardian ad litem, Gregory Hunter. Paz recounted, among other things, Rivera's statement to her that he had killed Diaz and that cutting Diaz's throat was like "cutting up chicken in preparation to cook it." JA at 1503. Paz was subsequently placed in the Federal Witness Protection Program, but voluntarily left the program and was murdered shortly thereafter.

The government moved to have Paz's statements admitted at trial through Hunter pursuant to Federal Rule of Evidence 804(b)(6). That rule allows the admission of a statement "against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804(b)(6). The district court conducted pre-trial evidentiary proceedings on the Rule 804(b)(6) issue outside of the presence of the jury. During those proceedings, the government argued that Rivera arranged to have Paz murdered because he learned through MS-13 members that she intended to testify against him at trial. The govern-

---

[2]The MS-13 members involved in the incident who were not tried in this action either pled guilty to the murder and testified on behalf of the government or are still at large.

ment presented evidence, including correspondence and transcripts of telephone calls that Rivera made from prison, indicating that he ordered MS-13 members to kill Paz and later bragged about the murder. In response, Rivera presented evidence that government agents had told him to maintain a "tough" gang persona with MS-13 because he might be asked to testify as a government informant. Rivera argued that his statements regarding Paz were made in furtherance of that role. At the conclusion of the hearing, the district court granted the government's motion to allow Guardian Ad Litem Hunter to testify at trial as to Paz's statements.

Rivera also sought during the evidentiary hearing to compel the testimony of Detectives Leonardo Bello, Rick Rodriguez, and John Thomas (collectively, the "Detectives"), who were investigating Paz's murder.[3] Rivera wanted to ask the Detectives about possible leads concerning who killed Paz. The government objected on the grounds that the proposed examination could compromise ongoing criminal investigations involving MS-13. After reminding the government of its obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to provide Rivera with any exculpatory information regarding its investigation of Paz's murder, the district court upheld the government's objection and prevented Rivera from compelling the production of the Detectives.

Finally, Ramirez-Guardado moved to sever his trial from Rivera's, arguing that the impending statement of Paz admitted against Rivera, as well as evidence that Rivera planned to stage a violent jailbreak,

---

[3]Notably, Rivera is *not* basing his request to question the Detectives on his Sixth Amendment right to cross-examination. Detectives Rodriguez and Thomas were not witnesses for the government during the Rule 804(b)(6) hearing. Accordingly, they produced no testimony against Rivera that he could cross-examine. Detective Bello was a witness for the government during the hearing, but the district court only relied on Detective Bello's testimony to establish that Rivera was a member of MS-13 and for the meaning of certain gang phrases. Rivera does not argue that he was unable to cross-examine Detective Bello concerning those points. Instead, Rivera bases his request to examine all of the Detectives concerning Paz's murder on his Sixth Amendment right to compel the production of witnesses in his favor.

would taint Ramirez-Guardado's trial and cause undue prejudice. The district court denied the motion, and the defendants were tried together.

On November 20, 2003, the jury returned guilty verdicts as to Rivera and Ramirez-Guardado. They were each sentenced to life imprisonment and timely filed the instant appeal.

## II.

We first review the district court's decision to allow the government to introduce Paz's out-of-court statements at trial as "statement[s] offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804(b)(6). Rivera appeals that ruling, arguing that the district court erred by: (1) applying the wrong burden of proof to the government; (2) improperly imputing to him the wrongdoing of others; (3) improperly preventing him from compelling the testimony of the Detectives during the Rule 804(b)(6) evidentiary hearing; and (4) improperly rejecting evidence that he presented at the Rule 804(b)(6) hearing. We address these contentions in turn, noting that we review evidentiary decisions for an abuse of discretion, but legal conclusions concerning the Rules of Evidence or the Constitution de novo. *United States v. Cherry*, 217 F.3d 811, 814 (10th Cir. 2000).

## A.

Rivera first challenges the district court's conclusion that the government needed to establish that he "engaged or acquiesced in wrongdoing" that led to Paz's unavailability by only a preponderance of the evidence. Rivera contends that courts should instead hold the government to a clear and convincing standard of proof when applying the 804(b)(6) exception in criminal cases.

Since this issue was briefed by the parties, this court has addressed the proper burden of proof applicable to a Rule 804(b)(6) motion and joined the majority of circuits holding that the government need prove that the defendant engaged or acquiesced in wrongdoing that led to

the witnesses unavailability by only a preponderance of the evidence. *United States v. Gray*, 405 F.3d 227, 241 (4th Cir. 2005). Accordingly, the district court did not err in applying the preponderance standard in this case.

B.

Rivera contends that the district court improperly imputed the acts of others to him for purposes of Rule 804(b)(6). He maintains that the Paz murder could not have been committed by him, since he was incarcerated, and Rule 804(b)(6) only allows the court to admit hearsay if the defendant has personally committed the wrongful act which caused the declarant's unavailability. Rivera misreads the Rule.

Rule 804(b)(6) is written broadly, allowing hearsay statements to be admitted against "a party that has engaged or *acquiesced in* wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804(b)(6) (emphasis added). Acquiescence consists of "the act or condition of acquiescing or giving tacit assent; agreement or consent by silence or without objection." Webster's Unabridged Dictionary 18 (Random House, 2nd ed. 2001). In other words, the plain language of the Rule supports the district court's holding that a defendant need only tacitly assent to wrongdoing in order to trigger the Rule's applicability. Active participation or engagement, or, as Rivera would have it, the personal commission of the crime, is not required.

Rivera cites no authority supporting his interpretation of the Rule and we can find none. Indeed, the other circuits that have considered the issue hold that a defendant need only acquiesce in wrongdoing to trigger the application of Rule 804(b)(6). *See United States v. Thompson*, 286 F.3d 950, 963-64 (7th Cir. 2002) (imputing co-conspirators actions to defendant for purposes of Rule 804(b)(6)); *Cherry*, 217 F.3d at 820 (same); *Mastrangelo*, 693 F.2d at 273-74 ("Bare knowledge of a plot to kill the victim and a failure to give warning to appropriate authorities is sufficient to constitute a waiver."); *Olson v. Green*, 668 F.2d 421, 429 (8th Cir. 1982) (noting that someone acting on defendant's behalf to procure the unavailability of a witness can operate to waive defendant's hearsay objection). We join these circuits in holding that the plain language of Rule 804(b)(6) allows the

admissibility of hearsay against a defendant by virtue of his having acquiesced in the acts taken to procure the declarant's unavailability. Therefore, the district court did not err in concluding that Rivera need only have acquiesced in Paz's death to trigger the Rule's applicability.[4]

C.

Rivera further contends that the district court erred in refusing to allow him to examine the Detectives who were investigating Paz's murder. As noted above, during the Rule 804(b)(6) proceedings the government presented evidence that Rivera ordered Paz's murder from prison. Rivera sought to challenge the underpinnings of the Rule 804 motion by moving to compel the production of the Detectives for examination pursuant to his Sixth Amendment right to compel the production of witnesses in his favor.[5] Rivera hoped to elicit facts to refute the government theory that MS-13 killed Paz. The government objected, claiming that such examination would compromise its ongoing investigations, and the district court agreed. Although ordering the government to turn over any evidence tending to show that MS-13 was not responsible for Paz's death, the district court refused to allow Rivera to compel the testimony of the Detectives.

Rivera argues that he was entitled to test the government's theory of blame, rather than having to "rely upon the [g]overnment to 'do the right thing' in coming forward with evidence inconsistent with its theory." Appellant's Brief at 33. The district court, on the other hand, held that a defendant is not entitled to discovery in an ongoing criminal investigation, although he was free to investigate the matter through his own agents. We affirm the district court, although on somewhat different grounds. While we agree that defendants have some right to explore the basis of the government's assertion of a

---

[4]We also note that Rivera understates the level of his involvement in Paz's death. There was substantial evidence, in the form of recorded interviews, telephone conversations, and letters, from which the district judge could have concluded that Rivera played an affirmative role in deciding that Paz should be murdered.

[5]As noted above, Rivera bases his right to examine the Detectives on his Sixth Amendment right to compel the production of witnesses, not on his right of cross-examination. *See supra*, fn.3.

Rule 804(b)(6) motion, for the following reasons we hold that Rivera did not make the requisite showing to compel the production of the Detectives in this case.

1.

As an initial matter, we find unconvincing the government's argument that a defendant has *no* right to discover information regarding the alleged wrongdoing that caused the witness to be unavailable for purposes of Rule 804(b)(6). Specifically, the government contends that a defendant should not be able to "take advantage of his own wrong" by using the government's 804(b)(6) motion to gain access to sensitive information. This contention, however, engages in circular reasoning. The purpose of a Rule 804(b)(6) hearing is to determine whether the government can prove by a preponderance of the evidence that the defendant engaged or acquiesced in the alleged wrongdoing that caused the unavailability of the witness. The district court cannot accept as axiomatic at the outset the contention that the inquiry seeks to prove. To deny discovery on the ground that the defendant engaged or acquiesced in wrongdoing is to assume the existence of the facts to be established.

2.

Having concluded that the fact of the defendant's alleged wrongdoing does not preclude his access to evidence in determining the applicability of Rule 804(b)(6), we must now determine the parameters of that right vis a vis the government's claim of privilege.[6] To do so, it is instructive to consider the context in which the issue arises.

We have recently reiterated the compelling nature of the right to

---

[6]As an initial matter, we agree with the district court that the government's burden to provide the defense with exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), applies to a Rule 804(b)(6) hearing. *See United States v. Bros. Constr. Co.*, 219 F.3d 300, 316 (4th Cir. 2000) (noting that *Brady* applies to material evidence both that exculpates a defendant and that allows a defendant to impeach evidence presented against him). Indeed, the government does not appear to dispute it.

access witnesses even in the face of grave national security concerns. *United States v. Moussaoui*, 382 F.3d 453 (4th Cir. 2004). There, we stated that

> The importance of the Sixth Amendment right to compulsory process is not subject to question—it is integral to our adversarial criminal justice system. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of the courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense. To state the matter more succinctly, few rights are more fundamental than that of an accused to present witnesses in his own defense.

*Id.* at 471 (internal citations and quotations omitted).

For these often-stated reasons, we conclude that the government's interest in protecting the information involved in its broader investigation must yield to the defendant's Sixth Amendment right, based upon a proper showing, to access evidence critical to his defense.[7]

---

[7]The Rule 804(b)(6) hearing is critical to a defendant's defense. While courts refer to Rule 804(b)(6) motions as hearsay exceptions, they actually operate as a forced waiver of a defendant's Sixth Amendment right to confront the witness whose hearsay statement will be offered against the defendant. *See Thompson*, 286 F.3d at 962 n.5 (citing Fed. R. Evid. 804(b)(6) advisory committee's note). "There are few subjects, perhaps, upon which . . . courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405 (1965). Accordingly, a defendant's right to contest the government's Rule 804(b)(6) motion is an integral part of his right to a fair trial. His right to compel witnesses in his favor to contest that motion is, therefore, identical to his right to compel witnesses in his favor at trial.

We now turn to a consideration of the showing that a defendant must make in order to give rise to such access. In *Moussaoui*, we noted that the compulsory process right does not attach to any witness that the defendant wishes to call. Rather, a defendant must demonstrate that the witness he desires would testify "in his favor" by providing testimony material to his case. U.S. Const. amend VI.; *Moussaoui*, 382 F.3d at 471.

Once a defendant demonstrates that a witness can provide testimony material to his defense, then the government's interest in its evidentiary privilege must give way. The proper course in that case "is for the district court to order production of the evidence or the witness and leave to the Government the choice of whether to comply with that order." *Moussaoui*, 382 F.3d at 474. "If the government refuses to produce the information at issue—as it may properly do—the result is ordinarily dismissal." *Id.*

It is not, therefore, a balancing test that we conduct between the defendant's Sixth Amendment rights and the government's interest in protecting its evidence; rather, it is "an examination of whether the district court correctly determined that the information the Government seeks to withhold is material to the defense." *Id.* at 476. If the evidence is material to the defense, then the government must provide the evidence or, in most cases, dismiss the prosecution. If the evidence is immaterial to the defense, then the district court can properly restrict defendant's access to the evidence in the face of a valid claim of governmental privilege.

In this case, Rivera acknowledges that he has *no reason* to believe that the Detectives have information material to his defense. The government's *Brady* disclosures did not provide any indication that someone other than MS-13 members killed Paz, and Rivera's independent investigation could find none. Rivera argues that Paz was cooperating with the police concerning different investigations in several states and that, therefore, people other than Rivera may have had a motive to kill Paz. Rivera, however, provides no evidence concerning these alleged "other people." He provides no basis on which to suggest that others were planning to or did kill Paz. He provides nothing indicating that the Detectives had any knowledge of possible other suspects in Paz's death. In fact, he provides no indication that others *did* want

Paz killed. All he presents is speculation that others may have had a motive to kill Paz because she was a government informer. Rivera's speculation that other people had a motive to kill Paz, without more, does not satisfy Rivera's burden to demonstrate that the Detectives can provide information material to his defense. Rivera has an absolute Sixth Amendment right to have witnesses called in his favor; he does not have a Sixth Amendment right to conduct an exploratory foray based on mere speculation. We, therefore, affirm the district court's decision to prevent Rivera from examining the Detectives.

D.

Finally, Rivera challenges the district court's factual determination during the evidentiary hearing that he acquiesced in Paz's murder. He contends that he presented evidence that he was acting under government direction to "keep up his gang persona" in order to act as a future government informant and that he was simply "putting on a show" for other gang members. We reject Rivera's argument.

When reviewing an evidentiary hearing, we will view the evidence in the light most favorable to the prevailing party below and only reverse the district court's factual findings if they are clearly erroneous. *United States v. Jones*, 356 F.3d 529, 533 (4th Cir. 2004). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Lentz*, 383 F.3d 191, 201 (4th Cir. 2004) (internal quotation omitted). In this case, the district court heard Rivera's evidence concerning his involvement with the police. It also heard evidence of multiple conversations and letters that Rivera had with MS-13 members from prison discussing, planning, and bragging about Paz's murder. The district court concluded that Rivera was not simply "playing a role" with MS-13, but was actively working to have Paz killed so she would not testify against him at trial. On the balance of the record before us, we find that this conclusion was not clearly erroneous. Accordingly, we affirm the district court's factual finding that Rivera acquiesced in Paz's death.[8]

---

[8]Rivera also argues that Paz's testimony was not credible because she was a former gang member and a possible police informant. Rivera, however, had the opportunity when cross-examining Hunter to reveal these facts to the jury. The issue of Paz's credibility was therefore properly left for the finder of fact.

III.

Rivera also argues that the district court erred in overruling his Federal Rule of Evidence 403 objection to Paz's statement. Because we find that the district court did not abuse its discretion in overruling the objection, we affirm.

Rule 403 states in part that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. We review a district court decision to admit evidence over a Rule 403 objection for an abuse of discretion. *United States v. Hassouneh*, 199 F.3d 175, 183 (4th Cir. 2000).

Rivera argues that the district court abused its discretion by allowing Paz's testimony because the testimony—that Rivera compared cutting Diaz's throat to "cutting up chicken"—would so inflame the jury's passions as to create a danger of unfair prejudice. He also contends that, when the government introduced Paz's testimony through her guardian ad litem, Gregory Hunter, it made an impermissible reference to Paz in the past tense, implying to the jury that Paz was dead and that Rivera was involved in her death.[9]

The district overruled Rivera's Rule 403 objection, claiming that Paz's testimony was probative and was not unduly inflammatory in the context of the other evidence presented at trial. That evidence included testimony from eyewitnesses that the murder was planned, that the victim pleaded for his life, and that Rivera personally cut the victim's throat with a steak knife after noticing that he was still moving after the initial stabbing.

Additionally, after the government made one reference to Paz in the past tense, the district judge discussed the matter with counsel and ordered the government to refrain from implying that Paz was deceased. The government complied with this order, and the district judge ruled that the probative value of Paz's testimony outweighed any possible inference that the jury might have drawn concerning

---

[9]The jury, of course, had not heard any of the testimony presented during the Rule 804(b)(6) evidentiary hearing concerning Paz's murder.

Rivera's role in Paz's death based on the one accidental comment. We hold that these rulings were well within the trial judge's discretion and do not constitute reversible error. Therefore, we affirm the district court's decision to admit Paz's testimony over Rivera's Rule 403 objection.

IV.

Finally, we review Ramirez-Guardado's contention that the district court erred in denying his motion to sever his trial from that of Rivera. "The grant or denial of a motion for severance . . . is within the trial court's discretion and will not be overturned absent a clear abuse of that discretion." *United States v. West*, 877 F.2d 281, 287-88 (4th Cir. 1989). "Generally, individuals indicted together should be tried together," *United States v. Strickland*, 245 F.3d 368, 384 (4th Cir. 2001) (internal quotation omitted), and "[a] defendant is not entitled to severance merely because separate trials would more likely result in acquittal, or because the evidence against one defendant is not as strong as that against the other." *Id.* (internal quotation omitted). A defendant must instead "show prejudice in order for the court's ruling to constitute an abuse of discretion. . . . Convictions should be sustained if it may be inferred from the verdicts that the jury meticulously sifted the evidence." *United States v. Porter*, 821 F.2d 968, 972 (4th Cir. 1987).

Ramirez-Guardado contends that the district court abused its discretion in denying his motion because the government introduced against Rivera both Paz's testimony and evidence that Rivera was planning a violent jailbreak. This evidence would not have been introduced against Ramirez-Guardado at a separate trial, and, he contends, its shocking and inflammatory nature so excited the emotions of the jury as to cause him undue prejudice. We disagree.

As an initial matter, we find that the objected-to evidence was not substantially more inflammatory than the evidence properly admitted against Ramirez-Guardado, including evidence that the victim begged for his life before his throat was cut and that Ramirez-Guardado ordered the murder. Additionally, Rivera and Ramirez-Guardado were tried with a third defendant, Luis Cartagena, who also unsuccessfully moved to have his trial severed from Rivera's trial. The jury

acquitted Cartagena in spite of hearing the objected-to evidence admitted against Rivera. Cartagena's acquittal by the same jury which convicted Rivera and Ramirez-Guardado strongly indicates that this jury was not unduly prejudiced by the objected-to evidence, but instead "meticulously sifted the evidence" presented at trial. *Porter*, 821 F.2d at 972. For these reasons, we hold that the district court did not abuse its discretion in refusing to sever Ramirez-Guardado's trial.

## V.

In conclusion, the district court did not err in granting the government's motion to admit Paz's testimony pursuant to Rule 804(b)(6). The district court did not abuse its discretion in overruling Rivera's motion to strike Paz's testimony under Rule 403 nor in refusing Ramirez-Guardado's motion to sever his trial. Accordingly, the convictions are

*AFFIRMED*.