**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4844**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

ANTHONY W. HORNE,

             Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Jerome B. Friedman, District
Judge.  (2:07-cr-00212-JBF-JEB-1)

Argued:  May 15, 2009                 Decided:  July 31, 2009

Before Sandra Day O'CONNOR, Associate Justice (Retired), Supreme
Court of the United States, sitting by designation, and NIEMEYER
and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Edward Anthony Fiorella, Jr., FRAIM AND FIORELLA,
Norfolk, Virginia, for Appellant.  D. Monique Broadnax, OFFICE
OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.
**ON BRIEF:** Dana J. Boente, Acting United States Attorney,
Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following his arrest in a prostitution sting operation at a Norfolk, Virginia motel, Anthony Horne was searched, and Norfolk police officers found on him heroin and cocaine, and in his room, cocaine base. Horne was charged in three counts with possessing illegal drugs with the intent to distribute them. On the government's motion, the court later dismissed Count III, charging Horne with possession of cocaine base with intent to distribute it, and the jury convicted him on Counts I (heroin) and II (cocaine). The district court imposed a variance sentence of 144 months' imprisonment -- the advisory Guideline range was 262-327 months' imprisonment.

On appeal, Horne challenges numerous aspects of his arrest and trial. Having carefully considered each, we affirm.

I

Horne contends first that the district court erred in denying his motion to suppress the drug evidence retrieved from his pocket during the search incident to his arrest because police officers did not have probable cause to arrest him for solicitation of prostitution.

The record shows that at approximately 8:00 p.m. on September 20, 2007, Horne approached undercover police officer Kim Cole, who was dressed like and posturing as a prostitute.

2

When Horne inquired as to what Officer Cole was doing, she told Horne that she was "working" because she needed money to pay for her motel room. Horne asked for Cole's motel room number, which she provided, and Horne then instructed Cole to return to her room and that he would be "up in a few minutes." Officer Cole asked Horne if he had any money, and Horne told her that he had "the next best thing," explaining that he meant "coke." Before he could give her "coke," however, he indicated that he needed a baby food jar and some baking soda in order to cook it. Officer Cole told Horne that she could obtain the baking soda and a jar from her room. When Officer Cole returned to her room, Horne called, but she did not answer.

A few minutes later, Officer Cole exited her room and returned to the sidewalk, where she again saw Horne, now wearing only boxer shorts. He initiated a second encounter, during which he talked about cooking the cocaine and told Officer Cole that he did not need the baking soda anymore. Horne told Officer Cole to return to her room and that he would be up in 15 or 20 minutes because they were "doing the cook now." Before separating, Horne asked Cole to pull up her sweatshirt. When she did, Horne touched Cole between her legs and told her to "hold that thing" for him. Cole responded that Horne would have to "wait for that." As Cole walked away, Horne asked Cole to pull up the back of her sweatshirt, which Cole did.

Approximately 20 minutes later, Horne knocked on Officer Cole's door. When Cole opened the door and let Horne in, Horne was arrested by police officers for solicitation of prostitution. The police searched Horne and found drugs in the pockets of his shorts.

In these circumstances, we have little difficulty concluding that the police officers had reason to believe that Horne came to Officer Cole's room to follow through with his offer to exchange drugs for sexual favors. The two had conversations that were sexual in nature, one of which included Horne making physical sexual advances toward Officer Cole, and Horne changed into his shorts after the first conversation and before returning to Cole's room. Because Cole had previously informed Horne that she was "working" and needed money, it was reasonable for Officer Cole to conclude that when Horne said he would come to her room with crack cocaine, he was intending to pay for sex with the drugs.

Officer Cole testified that she had significant experience working as an undercover prostitute, having previously served as one seven or eight times, leading to 35 or 40 arrests. Based on her experience and the facts of her encounter with Horne, she reasonably concluded that Horne was soliciting sex, for which he intended to pay with crack cocaine, a proposal that -- once he came to her room to consummate -- violated Virginia Code § 18.2-

4

346(B) (providing that "[a]ny person who offers money or its equivalent to another for the purpose of engaging in sexual acts . . . and thereafter does any substantial act in furtherance thereof shall be guilty of solicitation of prostitution").

We affirm the district court's findings that the police officers had probable cause to arrest Horne for solicitation of prostitution in violation of Virginia law. And because the officers made a valid arrest upon probable cause, we conclude that the search incident to arrest was constitutional. See Virginia v. Moore, 128 S. Ct. 1598, 1608 (2008).

## II

Horne next contends that the district court abused its discretion in refusing to appoint substitute counsel to represent him for a second time -- which would have been a third appointed counsel.

At the outset, the district court appointed Arenda Wright Allen to represent Horne. But because Allen refused to file a specific pretrial motion designated by Horne, Horne became displeased with her. Allen filed a motion to withdraw, and the district court discharged her and appointed another attorney, Jon Babineau, as substitute counsel.

Thereafter Horne became displeased with his second appointed counsel and sought to discharge him because he refused

to follow Horne's script for trial. When Babineau brought the issue to the attention of the court with a "motion for inquiry," the court held a hearing, during which it advised Horne that the court would not appoint a third counsel for Horne. Horne then insisted that he would represent himself, a request that the court granted.

In denying Horne's request for a third substitute counsel, the district court found first that Horne's request was not timely, inasmuch as it was made only five days before trial and the court had already postponed the trial once in order to provide Horne with the second substitute counsel.

The district court also found, after a thorough inquiry, that Horne had not shown good cause for substitution of counsel and that any friction between Horne and Babineau stemmed "largely from the defendant's own belligerence and disagreements with Mr. Babineau as to trial strategy." The court explained:

> Mr. Babineau did not join in the defendant's request for new counsel to be appointed because Mr. Babineau stated that he did not feel that there had been a total breakdown in communication and that he could still zealously represent the defendant at trial. Mr. Babineau is the defendant's second court-appointed counsel and the defendant has had the benefit of two well-respected and experienced defense attorneys. The defendant's first court-appointed counsel, Ms. Allen, asked to withdraw because the defendant became belligerent when she refused to file the motions the defendant requested because she found them to be without merit and frivolous. After listening to both the defendant and Mr. Babineau explain the situation, the court finds the defendant's problem with Mr.

Babineau to be almost identical. The defendant does not want Mr. Babineau to represent him because Mr. Babineau will not follow the defendant's exacting instructions about how to proceed and what to say at trial. The defendant does not want any of Mr. Babineau's legal advice or trial strategy, but merely wants Mr. Babineau to read verbatim from the defendant's script.

Finally, the district court found that there had not been a total breakdown in communication between Horne and Babineau so as to preclude an adequate defense. Babineau himself confirmed that he did not "believe there [was] a basis for [him] to withdraw as counsel in this particular case," and he promised "zealously [to] represent [Horne] in the case."

In light of the facts found by the district court, we cannot conclude that the district court abused its discretion in refusing to appoint a third substitute counsel for Horne. "An indigent defendant . . . has no right to have a particular lawyer represent him and can demand a different appointed lawyer only with good cause." United States v. Gallop, 838 F.2d 105, 108 (4th Cir. 1988); see also United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006) ("[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them"). Moreover, the determination of whether good cause exists rests within the discretion of the trial court, see Gallop, 838 F.2d at 108. We conclude that in the circumstances of this case, the district court did not abuse that discretion.

III

As a corollary to the previous argument, Horne contends that he "never clearly and unequivocally asserted his desire to represent himself." See Faretta v. California, 422 U.S. 806, 821 (1975) (holding that a defendant has a Sixth Amendment right to self-representation); United States v. Frazier-El, 204 F.3d 553, 558 (4th Cir. 2000) (providing that a court may grant a defendant's request to represent himself if the request is (1) timely, (2) clear and unequivocal, and (3) knowing, intelligent, and voluntary).

During the hearing on Babineau's motion for inquiry about continued representation, Horne repeatedly expressed a desire to represent himself if Babineau would not follow Horne's script for trial. And the district court repeatedly advised Horne that it did not think it would be in his best interest to represent himself, warning Horne of the disadvantages of self-representation. Nonetheless, Horne persisted. After admonishing and questioning Horne carefully, the district court said to Horne, "And you are not going to come back to this court later on and say, hey, the judge should never have let me represent myself," to which Horne responded, "I'm all right." The court then granted Horne's request, concluding that Horne "established that he had a full understanding of his responsibilities and the possible consequences, and he clearly

8

and unequivocally expressed his desire to represent himself at trial."

On this record, we conclude that Horne effectively waived his right to counsel and asserted his right to self-representation and that the district court did not err by allowing Horne to proceed pro se.  See Faretta, 422 U.S. 806; United States v. Singleton, 107 F.3d 1091, 1096-98 (4th Cir. 1997).

IV

Horne further contends that "[r]ather than permitting [him] to represent himself at trial, the Trial Court should have imposed reasonable conditions on trial counsel, or have provided advisory counsel to [him]."

There is, however, no constitutional right to advisory counsel or some other form of hybrid representation during self-representation.  See Singleton, 107 F.3d at 1102.  On this record, we conclude that the district court did not abuse its discretion in refusing to provide advisory counsel to Horne, especially when it explicitly warned Horne before he chose to represent himself that the court would not appoint standby counsel or advisory counsel.

Horne next contends that "the trial court committed 'Plain Error' in failing to instruct the jury on the lesser included offense of simple possession of a controlled substance." He argues that "the evidence would have permitted a jury rationally to find [him] guilty of simple possession," in violation of 21 U.S.C. § 844.

A review of the record, however, does not support Horne's assertion that evidence existed to support the lesser-included offense, and thus we conclude that the district court did not err in instructing the jury on only the offense of possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

At trial, the government introduced Horne's written statement that he intended to exchange the controlled substances on his person for sexual favors. The government also introduced testimony regarding Horne's statements to Officer Cole that he would pay her with cocaine, the "next best thing" to money, and testimony of Horne's actions and sexual advances toward Cole, implying that he would exchange drugs for sexual favors. Moreover, Horne presented no evidence from which a reasonable jury could have found that his intent was to possess the drugs for personal use. Indeed, no one testified at trial that Horne

10

used drugs or that he possessed drugs for any purpose other than distribution.

Thus, we cannot conclude that the district court erred in not having given an instruction on the lesser-included offense of simple possession.  See United States v. Wright, 131 F.3d 1111, 1112 (4th Cir. 1997) (holding that a defendant is entitled to an instruction on a lesser-included offense when the element distinguishing the two offenses is "sufficiently in dispute [such] that the jury could rationally find the defendant guilty of the lesser offense but not guilty of the greater offense" (internal quotation marks and citation omitted)).


VI

Horne also contends that the district court "failed to make a satisfactory record of whether Horne knowingly and voluntarily waived his right to testify."  Because he did not raise the issue below, Horne asserts that "the error was plain, that it affected his substantial rights, and [that it] warrants this court's review."

While a waiver of the right to testify must be knowing and intelligent, there is no affirmative duty on a district court to advise the defendant of his right or to obtain an on-the-record waiver of that right.  See United States v. McMeans, 927 F.2d 162, 163 (4th Cir. 1991); see also Sexton v. French, 163 F.3d

11

874, 882 (4th Cir. 1998) ("[T]rial counsel, not the court, has the primary responsibility for advising the defendant of his right to testify and for explaining the tactical implications of doing so or not").

Thus, the district court did not err in failing to advise Horne formally of his right to testify or to obtain an on-the-record waiver of that right. Horne nonetheless was well aware of the right. He discussed the right to testify with his attorney prior to the suppression hearing, at which he elected to testify. In addition, the district court advised Horne before trial of the instructions that the court intended to give in the event that Horne decided to testify, and the court revisited the issue and advised Horne of the possible implications of deciding to testify at the conclusion of the government's case-in-chief, noting that "you are going to have to decide overnight whether you want to testify or whether you don't want to testify." Because Horne "knew that he could testify if he wanted to, his failure to testify . . . cannot be the product of ignorance of his right. Instead, his failure to testify was of his own choosing; he can not now approach the court and complain of the result of his decision." McMeans, 927 F.2d at 163.

12

VII

Finally, Horne contends that he was denied the opportunity of having two police officers (Officer R.M. Jackson and Officer J.V. Natiello) testify as witnesses in his defense. He contends that these officers would have impeached the testimony of other officers who testified at trial. Horne also contends that he was denied access to witness Kennette Alleyne, the woman with whom he shared his motel room. He argues that he "was not told that he could have asked Alleyne what, if any, promises were made to her in exchange for her refusing to cooperate with the ongoing internal affairs investigation" regarding money allegedly stolen from his motel room.

On the morning of trial, Horne advised the district court that he did not intend to call any witnesses. But after the government rested, Horne requested that Officers Jackson and Natiello be summoned by the court to testify to impeach the other officers based on his claim that money in his room was missing after the search. Horne, however, did not make the required showing that either of the witnesses would testify in his favor by providing testimony material to his defense. See United States v. Rivera, 412 F.3d 562, 569-70 (4th Cir. 2005). These two officers had no contact with Horne, and they did not provide any information regarding prior inconsistent statements of any government witness. As a consequence, Horne could not

13

have shown that they would have provided testimony in his favor. While Horne had a right to have witnesses called in his favor, he did not have a right to conduct "an exploratory foray based on mere speculation." Rivera, 412 F.3d at 570.

In addition, we note that had the district court permitted Horne to present evidence regarding money taken from his motel room during the course of the search, the testimony might have exposed Horne to the government's introducing evidence of crack cocaine found in his motel room -- the basis for Count III. As it turned out, without the evidence, the government moved to dismiss Count III on its agreement not to introduce this evidence in its case-in-chief based on questions about the constitutionality of the search of Horne's motel room.

With respect to Kennette Alleyne, Horne did subpoena her to trial, but she asserted her Fifth Amendment right to refuse to testify in light of pending state charges. For that reason, Horne said she could go. Accordingly, there is no issue that the court denied Horne access to Alleyne. Moreover, had Alleyne been willing to testify, she too might have opened the door to the government's presentation of evidence on Count III.

For the reasons given, the judgment of the district court is

AFFIRMED.

14