**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4357**

UNITED STATES OF AMERICA,

    Plaintiff – Appellee,

  v.

CHARLES BURTON RITCHIE,

    Defendant – Appellant.

**No. 17-4377**

UNITED STATES OF AMERICA,

    Plaintiff – Appellee,

  v.

BENJAMIN GALECKI,

    Defendant – Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Newport News. Raymond A. Jackson, District Judge. (4:15-cr-00018-RAJ-LRL-1; 4:15-cr-00018-RAJ-LRL-2)

Argued: May 10, 2018         Decided: May 25, 2018

Before DUNCAN and AGEE, Circuit Judges, and SHEDD, Senior Circuit Judge.

---

Vacated and remanded by unpublished opinion. Senior Judge Shedd wrote the opinion, in which Judge Duncan and Judge Agee joined.

---

**ARGUED:** Christian Lee Connell, Norfolk, Virginia, for Appellant Benjamin Galecki. J. Lloyd Snook, III, SNOOK & HAUGHEY, PC, Charlottesville, Virginia, for Appellant Charles Burton Ritchie. Eric Matthew Hurt, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee. **ON BRIEF:** Dana J. Boente, United States Attorney, Alexandria, Virginia, Kevin Hudson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Senior Circuit Judge:

A jury convicted Charles Burton Ritchie and Benjamin Galecki (the Defendants) on multiple counts related to their distribution of synthetic marijuana, commonly known as "spice." Prior to trial, the Defendants sought to compel the testimony of a chemist employed by the Drug Enforcement Agency (DEA) who had previously opined that the active chemical ingredient in the Defendants' spice (UR-144) was not an analogue under the Controlled Substance Analogue Enforcement Act (the Analogue Act). The district court denied the motion, finding that the Government properly claimed entitlement to the deliberative process privilege. The Defendants challenge that ruling on appeal. Because we find the Government has waived any reliance on that privilege, we vacate the convictions and remand for further proceedings.

I.

The Defendants operated Zencense Incenseworks, LLC,[1] a wholesale manufacturer and distributor of their own brand of spice. Zencense's distribution network included most of the United States, including the Hampton Roads region of Virginia. Zencense experimented with several different chemical formulas for its spice but settled on a product with XLR-11 and UR-144 as the active ingredients.[2]

---

[1] Zencense later changed its name to ZenBio.

[2] All of the expert testimony in this case agreed that XLR-11 and UR-144 are indistinguishable, and the Government treats them as the same substance.

3

Zencense's spice operations came to the attention of the Government and, in July 2012, DEA agents raided Zencense's production facility in Las Vegas. Eventually, the Defendants were charged in eight counts of a third-superseding indictment for conspiracy to distribute controlled substance analogues, in violation of 21 U.S.C. §§ 846 & 813, distribution of controlled substance analogues, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C), use of a facility in interstate commerce with intent to promote unlawful activity, in violation of 18 U.S.C. § 1952(a)(3) & (2), and unlawful usage of a communication facility, in violation of 21 U.S.C. § 843(b).

To understand the issue presented in this appeal, a brief overview of the Analogue Act is necessary. The Controlled Substances Act (CSA) makes it unlawful for "any person" to "knowingly or intentionally" distribute a controlled substance. 21 U.S.C. § 841(a)(1). The Analogue Act supplements the CSA by providing that "a controlled substance analogue shall, to the extent intended for human consumption, be treated," "as a controlled substance in schedule I." 21 U.S.C. § 813. A "controlled substance analogue" is a substance whose "chemical structure" is "substantially similar to the chemical structure of a controlled substance in schedule I or II," and has a "stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than" a schedule I or II controlled substance. 21 U.S.C. § 802(32).

The Government alleges that XLR-11 and UR-144 are analogues of JWH-018, a Schedule I controlled substance. The DEA's determination that a substance is an analogue is made by its Drug and Chemical Evaluation Section (DRE). During the process of determining if UR-144 is an analogue, the DRE solicited the views of Dr. Arthur Berrier,

4

a Senior Research Chemist with the DEA's Office of Forensic Sciences. Dr. Berrier concluded that UR-144 is not substantially similar in chemical structure to JWH-018, which would mean that it is not outlawed by the Analogue Act.

After becoming aware of Dr. Berrier's dissenting view, the Defendants made a *Touhy*[3] request for his testimony. The Government opposed the motion to compel, arguing that "some of the information sought [was] part of the deliberative process and is therefore privileged." (J.A. 673). The district court denied the Defendants' motion, "find[ing] that the denial of this Touhy request is appropriate as it would violate the Deliberative Process Privilege of the Drug Enforcement Agency to grant the subpoena." (J.A. 85).

At trial,[4] the Defendants presented expert testimony to support their position that XLR-11 and UR-144 were not analogues because they differ in chemical structure from JWH-018. The Defendants further argued that they did not know XLR-11 and UR-144 were analogues because they did not know the substances were similar in chemical structure to JWH-018. At the close of evidence, and after the district court issued an *Allen* charge,[5] the jury convicted the Defendants on all counts.

II.

---

[3] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

[4] This was the second trial in this case. The first trial ended in a mistrial after the jury hung on all counts against the Defendants.

[5] "Derived from *Allen v. United States*, 164 U.S. 492 (1896), the commonly termed *Allen* charge is a supplemental instruction given by a trial court when the jury has reached an impasse in its deliberations and is unable to reach a consensus." *United States v. Cornell*, 780 F.3d 616, 625 (4th Cir. 2015).

On appeal, the Defendants raise multiple arguments in favor of reversal. Because we agree that the district court erred in its handling of the Defendants' motion to compel Dr. Berrier's testimony, we vacate and remand.

A.

The Defendants argue that the district court should have permitted Dr. Berrier's testimony. Pursuant to 5 U.S.C. § 301, a federal agency may enact regulations governing when its employees can testify at trial. *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007). These so-called "*Touhy*" regulations allow for agency heads, rather than individual employees, to determine if a subpoena "will be willingly obeyed or challenged." *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 468 (1951). If the Government challenges a subpoena, it must make a "formal claim of privilege." *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953). Here, the Government asserted the deliberative process privilege, and, in a one-sentence order, the district court found "that the denial of this Touhy request is appropriate as it would violate the Deliberative Process Privilege" of the DEA. (J.A. 85).

The Defendants contend that the district court's ruling violated their Sixth Amendment right to compulsory process. The Sixth Amendment provides that the "accused shall enjoy the right" to, *inter alia*, "have compulsory process for obtaining witnesses in his favor," U.S. Const. amend, VI, a right we have recognized as "integral to our adversarial criminal justice system," *United States v. Moussaoui*, 382 F.3d 453, 471 (4th Cir. 2004). The right "does not attach to any witness the defendant wishes to call," but only to those who would testify "in his favor." *Id.* (internal quotation marks omitted). The

6

Supreme Court has clarified that the Sixth Amendment is violated when the witness testimony "would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).

Thus, we have explained that "a failure to disclose information under *Touhy* only violates the defendant's Sixth Amendment rights to present a defense where the defendant can show that the excluded testimony would have been both material and favorable to his defense." *United States v. Guild*, 341 Fed. App'x 879, 886 (4th Cir. 2009) (internal quotation marks omitted). In practical effect, the Government's claim of privilege works in concert with the normal Sixth Amendment analysis. That is, "[o]nce a defendant demonstrates that a witness can provide testimony material to his defense, then the government's interest in its evidentiary privilege must give way." *United States v. Rivera*, 412 F.3d 562, 569 (4th Cir. 2005). "The proper course . . . 'is for the district court to order production of the evidence or the witness and leave to the Government the choice of whether to comply with that order.'" *Id.* (quoting *Moussaoui*, 382 F.3d at 474). "If the evidence is material to the defense, then the government must provide the evidence or, in most cases, dismiss the prosecution." *Id.* at 570.

Applying this framework, we readily conclude that the district court erred in concluding that the deliberative process privilege applies because, to the extent the privilege covers Dr. Berrier, the Government has waived any reliance on it. The Government has, by its own admission, provided Dr. Berrier's opinion as *Brady*[6] material

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

in criminal cases involving XLR-11 and UR-144. *See United States v. $177,844.68 in U.S. Currency*, 2015 WL 4227948, *3 (D. Nev. 2015) (cataloguing cases). Moreover, Dr. Berrier recently testified in open court pursuant to a motion to compel in an analogue case involving the distribution of UR-144. *See United States v. Broombaugh*, 2017 WL 2734636 (D. Kan. 2017) (ordering the unsealing of Dr. Berrier's testimony). Finally, Dr. Berrier's opinion that UR-144 is not an analogue of JWH-018 is freely available online. *See* Federal Judicial Center, *Litigating Synthetic Drug Cases*, http://fln.fd.org/files/training/April%202015%20Handout.pdf, pp. 37-41 (last visited May 16, 2018) (saved as an ECF opinion attachment). Therefore, Dr. Berrier's opinion was accessible to everyone but the jurors in this case.

The absence of a privilege does not end the inquiry, however, because the Defendants' compulsory process right extends only to "favorable" and "material" witnesses and evidence. Dr. Berrier's testimony is clearly favorable to the Defendants, but the district court did not consider materiality, and we leave it to that court to determine in the first instance. If Dr. Berrier's testimony is material and otherwise admissible, the Defendants' Sixth Amendment rights were violated by his exclusion from the trial.

B.

Because we are vacating the Defendants' convictions and remanding for further proceedings, including, potentially, a new trial, we exercise our discretion to address one additional claim that is "likely to recur," the Defendants' challenge to the district court's

8

instruction on *mens rea* under the Analogue Act.[7] *United States ex rel. Drakeford v. Tuomey Healthcare Sys. Inc.*, 675 F.3d 394, 406 (4th Cir. 2012). We review *de novo* the Defendants' argument "that a jury instruction failed to correctly state the applicable law." *See United States v. Jefferson*, 674 F.3d 332, 351 (4th Cir. 2012). In reviewing jury instructions, "we do not view a single instruction in isolation." *United States v. Rahman*, 83 F.3d 89, 92 (4th Cir. 1996). We are obligated to "consider whether taken as a whole and in the context of the entire charge, the instructions accurately and fairly state the controlling law." *Id.*

In *McFadden v. United States*, 135 S.Ct. 2298, 2305 (2015), the Court held that to sustain a conviction under the Analogue Act, "the Government must prove that a defendant knew that the substance with which he was dealing was a controlled substance." This burden of proof could be satisfied in two ways in analogue cases, including by showing "that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue." *Id.* Offering further guidance, the Court explained:

> The Analogue Act defines a controlled substance analogue by its features, as a substance "the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II"; "which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than" the effect of a controlled substance in schedule I or II; or which is represented or intended to have that effect with respect to a particular person. §802(32)(A). A defendant who possesses a substance with knowledge of those features knows all of the facts that make his conduct illegal, just as a defendant who

---

[7] The Defendants raise several other objections to the district court's rulings, which we do not address.

knows he possesses heroin knows all of the facts that make his conduct illegal.

*McFadden*, 135 S.Ct. at 2305. On remand, we reiterated that the Government must prove that "the defendant . . . knew either the legal status of the substance, or the chemical structure and physiological effects of that substance." *United States v. McFadden*, 823 F.3d 217, 223 (4th Cir. 2016).

> Here, the district court instructed the jury that:

> Under the second method [of proof], the government may establish that the defendant knew that the specific analogue he was dealing with, even if he did not know its legal status as an analogue. A conviction under the Analogue Act therefore requires the government to prove the defendant, number one, distributed a substance that had the chemical structure of an analogue and actually intended or claimed physiological effects of an analogue.

> Two, intended that the substance be used for human consumption.

> And, three, knew either the legal status of the substance or the specific analogue he was dealing with.

(JA 2027-2028). In an earlier instruction, the court had defined an analogue as follows:

> Controlled substance analogue means a substance, Number one, the chemical structure of which is substantially similar to the chemical structure of a controlled substance in Schedules I or II. JWH-018 was the controlled substance here.

> Number two, which has a stimulant, depressant or hallucinogenic effect on the central nervous system that is substantially similar to or greater than [JWH-018]

(J.A. 2026).

On balance, although the mens rea instruction may have been helped by the further explanatory sentences from *McFadden*, it tracks the Court's general definition of the second method of proof. In addition, the district court had already instructed the jury that

10

a substance is an analogue only if it is substantially similar to a controlled substance in both chemical structure and pharmacological effect. As we have noted, we examine jury instructions "as a whole" and do not "succumb lightly to semantic fencing." *Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011) (internal quotation marks omitted). Here, the instruction is accurate on the law, an almost-verbatim quote from the Supreme Court, and it is not misleading. The district court "could—and perhaps should—have instructed the jury" in the manner proposed by the Defendants, but the "decision not to do so . . . and the accurate, if more general, instructions that the court did give did not constitute an abuse of discretion." *Id.* at 595 (Wynn, J., concurring).

## III.

Because the district court erred in concluding that the deliberative process privilege shielded Dr. Berrier from testifying, we vacate the Defendants' convictions and remand the case for further proceedings consistent with this opinion.

*VACATED AND REMANDED*