**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-4020

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILFREDO MONTOYA BAIRES, a/k/a Nino,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:05-cr-00478)

Submitted:  September 12, 2007       Decided:  November 15, 2007

Before NIEMEYER and TRAXLER, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Lana M. Manitta, RICH GREENBERG ROSENTHAL & COSTLE, LLP, Alexandria, Virginia, for Appellant.  Chuck Rosenberg, United States Attorney, Patrick F. Stokes, Morris R. Parker, Jr., Assistant United States Attorneys, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Wilfredo Montoya-Baires shot and killed Jose Escobar, a fellow member of the Mara Salvatrucha ("MS-13") gang. He appeals from his resulting convictions and life sentence imposed following a jury verdict of guilty of conspiracy to commit murder in aid of racketeering, 18 U.S.C. § 1959(a)(5) (2000), murder in aid of racketeering, 18 U.S.C. §§ 2, 1959(a)(1) (2000), use of a firearm in the commission of a crime of violence, 18 U.S.C. §§ 2, 924(c)(1)(A) (West Supp. 2007), and possession of a firearm and ammunition by an alien illegally in the United States, 18 U.S.C. § 922(g)(5) (2000). On appeal, Baires challenges the district court's decision to allow the government to present additional evidence of racketeering activity beyond the three instances initially approved. He also contends that the district court abused its discretion in limiting the manner of cross-examination of government witnesses who testified with the aid of interpreters and he challenges the constitutionality of his life sentence. We affirm.

Baires' first argument on appeal is that the district court abused its discretion by allowing the government to present excessive, cumulative evidence of "racketeering acts" committed by members of the MS-13 gang, of which Baires was a member. He contends that the probative value of such evidence, beyond that which was necessary to prove that MS-13 is a racketeering

organization, was outweighed by the prejudicial effect the evidence had on his case, in violation of Fed. R. Evid. 403.

Prior to trial, the district court held a hearing and determined that it would allow the government to present evidence of three racketeering acts and, after that, the government could request permission to present more, and the court then would consider whether any additional such evidence would be more prejudicial than probative. The government presented the testimony of Detective Rick Rodriguez and three MS-13 gang members as to the general background of the MS-13 gang, their rules, and some activities, including stealing cars and transporting them across state lines and into Central America. Joel Mattos, an MS-13 member, also testified that he sold drugs while a member of the gang and that the MS-13 gang stole cars and took the cars or car parts to other states. Mattos testified that one of the gang's rules was that MS-13 members did not cooperate with the police. If a member did cooperate with the police, he would be killed. Gang members also had to kill or hurt rival gang members. Killing a rival gang member—or an MS-13 member who the gang leaders determined had cooperated with the police—would result in increased respect and position in the gang.

Angel Barrera also testified about the rules of MS-13. Barrera testified about how he and three other MS-13 members tricked a rival gang member, Joaquin Diaz, into accompanying them

in their vehicle, took him to an isolated area in a park, stabbed him repeatedly, kicked him, cut off his wrists, and cut his throat.

Osmin Alfaro-Fuentes testified that the MS-13 gang leaders gave him a mission to kill a rival gang member. He attempted to carry out the mission by shooting five times into a car that he believed was occupied by rival gang members. After discovering that no one in the vehicle was hurt, Alfaro-Fuentes tried again, this time completing his mission and killing Jose Sandoval, a seventeen-year-old suspected rival gang member, and shooting Sandoval's sixteen-year-old sister, Lorena.

Over Baires' objection, the district court allowed the government to call Lorena Sandoval in order to corroborate the testimony of gang members, who may not be found to be credible. The court admonished the government not to use photographs and to "do it quickly." The court also advised Baires' attorneys that they could renew the objection if the testimony became excessive. Lorena Sandoval merely testified that a guy approached her and her brother on a bicycle, mentioned the 18th Street gang—a rival of the MS-13 gang. As soon as Jose admitted to being in the 18th Street gang, the guy shot her and her brother. She further testified that she had been shot in the back and suffered a collapsed lung.

The government then requested permission to present evidence of one more act of violence. The district court agreed to allow evidence of one more violent act and reminded the jury that

the purpose of the preceding evidence was to show racketeering acts by an enterprise, not to prove any bad conduct by Baires.

Christopher Padilla, a member of the Southside Locos gang, testified that he and two other members of his gang chased an MS-13 gang member to an apartment building. An MS-13 member came out of the apartment with a machete and chased Padilla. Two other MS-13 members caught Padilla, and the machete-bearing MS-13 member hit him in the forehead, back, hands, and head with the machete and the other two kicked him. Padilla testified about his injuries, including that he lost four fingers on his left hand.

Baires argues that the testimony of Lorena Sandoval and Christopher Padilla was excessive and cumulative and that it should have been excluded under Fed. R. Evid. 403. The district court's decision to admit evidence is given broad deference and will be overruled only upon an abuse of discretion. United States v. Rivera, 412 F.3d 562, 571 (4th Cir.), cert. denied, 126 S. Ct. 670 (2005); United States v. Love, 134 F.3d 595, 603 (4th Cir. 1998). In reviewing the admission of evidence, this court is to construe the evidence in the "light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990).

In order to convict for murder in aid of racketeering activity under 18 U.S.C. § 1959 (2000), the government had to prove

beyond a reasonable doubt:  (1) that the organization was a RICO enterprise; (2) that the enterprise was engaged in racketeering activity as defined in RICO; (3) that the defendant had a position in the enterprise; (4) that the defendant committed the alleged crime of violence; and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.  United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994).  An enterprise must "exhibit three basic characteristics: (1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that in a pattern of racketeering."  United States v. Nabors, 45 F.3d 238, 240 (8th Cir. 1995).

The evidence Baires challenges did not simply go to proving that a number of violent acts were committed or that the activities were racketeering acts, but rather were presented to prove additional elements of the crime, namely the "continuity, unity, shared purpose, and identifiable structure" of MS-13, which proved that it was a RICO enterprise.  Fiel, 35 F.3d at 1003 ("The hallmark concepts that identify RICO enterprises are 'continuity, unity, shared purpose and identifiable structure.'"); see United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991) (holding that evidence of uncharged acts of violence by members is probative of the existence of a RICO enterprise).  The evidence also was relevant to show motive for killing.  Specifically, the

government's witnesses testified that killing a rival gang member or killing a person believed to be cooperating with the police would increase the member's status in the gang and his reputation. This evidence of gang ambition and gang loyalty as a motive was presented as a reason why Baires would kill Escobar. This evidence was necessary to counter Baires' contention that the killing occurred in the spur of the moment and during a heated argument. This evidence served to help the jury understand Baires' reasons for reporting to the MS-13 leaders that Escobar was a snitch, thus authorizing the killing of Escobar, and setting Baires up for advancement within the gang for carrying out the execution order on Escobar. See United States v. Bolden, 325 F.3d 471, 494 (4th Cir. 2003) (discussing evidence presented as to motive).

Baires argues that Padilla's testimony and the testimony of Lorena Sandoval were purely prejudicial. However, we find that the corroboration provided by Lorena Sandoval to the testimony of Alfaro-Fuentes, an admitted gang member and felon, is clearly probative, for, as the district court acknowledged, Alfaro-Fuentes' credibility was subject to challenge in light of his being an incarcerated felon who was testifying in the hope of having his sentence reduced. The testimony of Padilla regarding the attack on him was probative of the rules of the MS-13 gang and the fact that the gang was a RICO enterprise. Additionally, the evidence concerning the attack and attempted murder of Padilla was not

significantly different from the evidence of the brutal attack and murder of Joaquin Diaz. Moreover, the district court issued a cautionary instruction just prior to Padilla's testimony and again at the end of the trial, thereby obviating any unfair prejudice that might have resulted from the testimony. See Love, 134 F.3d at 603 (holding that cautionary instructions generally obviate any unfair prejudice from testimony).

Accordingly, we find that the district court did not abuse its discretion in admitting this evidence as probative of the existence of a RICO enterprise, the fact that killing of rivals and snitches was encouraged and required by the enterprise, and as to Baires' motive in killing Escobar. See Rivera, 412 F.3d at 571.

Baires next argues that the district court abused its discretion by limiting his cross-examination, in violation of his Sixth Amendment right to confront the witnesses against him. Specifically, during the cross-examination of two witnesses who testified for the government with the aid of an interpreter, the district court judge sustained the government's objection to the form of a question and directed Baires' attorney to "ask questions. Don't simply state a proposition. Ask a question." The court explained that, given the language barrier, statements of fact on cross-examination were "unfair to the witness."

Baires contends that the witnesses stated that they understood some English, and they did not indicate that they had

difficulty understanding counsel's cross-examination. Baires asserts that the court's requirement that counsel only use questions limited counsel's ability to effectively confront the two key witnesses to the shooting of Jose Escobar.

The Confrontation Clause guarantees the accused the right to cross-examine witnesses. U.S. Const. amend. VI; United States v. Smith, 451 F.3d 209, 221 (4th Cir.), cert. denied, 127 S. Ct. 197 (2006). Thus, "a trial court should accord a criminal defendant a reasonable opportunity to conduct cross-examination that might undermine a witness's testimony." Id.; see Quinn v. Haynes, 234 F.3d 837, 847 (4th Cir. 2000). However, the trial judge retains wide latitude to impose "reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

Here, Baires' ability to cross-examine the government's witnesses was not unconstitutionally restricted, because the district court limited only the manner of cross-examination, not the scope of it. This was a reasonable way for the district court to resolve what it perceived as confusion caused to the Spanish-speaking witnesses by the manner of cross-examination using of statements, rather than questions. See Fed. R. Evid. 611(c) ("ordinarily leading questions should be permitted on cross-

examination"). Notably, the court did not prevent Baires' counsel from questioning Freddy Escobar or Raul Escobar with respect to their potential biases and motives or with respect to any substantive areas. The court was not so much limiting cross-examination, as seeking to prevent any confusion caused by translations and the language barrier. We find no abuse of discretion in this instance. See Smith, 451 F.3d at 220; United States v. Cropp, 127 F.3d 354, 358 (4th Cir. 1997).

Baires' final argument is that his life sentence is unconstitutional because it was imposed as a mandatory minimum sentence under the statute of conviction. See 18 U.S.C. § 1959(a)(1). He contends that because the Supreme Court in United States v. Booker, 543 U.S. 220, 234 (2005), made mandatory guideline sentences unconstitutional, a mandatory statutory sentence must also be unconstitutional. He seeks to be resentenced with consideration given to the factors set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2007).

We have held that Booker did not change the fact that a sentencing court cannot impose a sentence below the statutory minimum. United States v. Robinson, 404 F.3d 850, 862 (4th Cir.), cert. denied, 126 S. Ct. 288 (2005); see United States v. Green, 436 F.3d 449, 455-56 n.* (4th Cir.) (providing that statutory "maximum and minimum sentences must be honored except as statute otherwise authorizes"), cert. denied, 126 S. Ct. 2309 (2006).

- 10 -

Thus, we find no error in the district court's determination of Baires' sentence.

In conclusion, we affirm Baires' conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>