**Wilfredo Montoya BAIRES, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Criminal No. 1:05cr478.**
**Civil Action No. 1:09cv155.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 16, 2010.

**660**

Wilfredo Montoya Baires, pro se.

## ORDER

T.S. ELLIS, III, District Judge.

The matter is before the Court on the *pro se* petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Petitioner, who was convicted of murder in aid of racketeering and related offenses and sentenced to a mandatory term of life imprisonment, asserts that his sentence should be vacated because his Sixth Amendment right to effective assistance of counsel was violated in several respects. As both parties have fully briefed the issues, and neither oral argument nor an evidentiary hearing would aid the decisional process,[1] the petition is ripe for disposition.

### I.[2]

Petitioner was charged in a superseding indictment alleging (i) murder in aid of racketeering in violation of 18 U.S.C. § 1959, (ii) conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959, (iii) possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922, and (iv) illegal use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Specifically, the indictment alleged that petitioner, an El Salvadoran national, was a member of MS–13, a nationwide crime gang with a significant presence in Northern Virginia. The indictment further charged that petitioner and two others, Freddy Escobar and Wilmer Lopez–Lopez, conspired to kill a fellow MS–13 member, Jose Escobar, as a result of an intra-gang feud, and on August 11, 2004, petitioner shot and killed Escobar. Petitioner was appointed two defense attorneys and pled not guilty.[3] At the time he was arrested, in November

---

1. *See* Rule 78(b), Fed.R.Civ.P. Although petitioner requests an evidentiary hearing, 28 U.S.C. § 2255 states that a hearing is not necessary when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." In this case, a hearing is not necessary as the record evidence conclusively compels the conclusion that petitioner's claims fail on their merits. *See United States v. Witherspoon*, 231 F.3d 923, 925–26 (4th Cir.2000).

2. The facts recited herein are derived primarily from the parties' pleadings and are not materially disputed.

3. The indictment also charged two alleged coconspirators, Freddy Escobar and Wilmer Lopez–Lopez, with murder in aid of racketeering and conspiracy to commit murder in aid of racketeering. The two codefendants pled guilty prior to trial.

2005, petitioner was not advised of his right of consular notification, nor did the arresting agents notify the El Salvadoran Embassy of his arrest. Some two months later, in January 2006—eight months prior to trial—the Office of the United States Attorney notified the El Salvadoran Embassy of petitioner's arrest and promptly informed petitioner's counsel that it had done so. There is no indication that the El Salvadoran government responded, offered assistance, or opposed petitioner's continued detention.

At trial, petitioner, by counsel, objected to the government's introduction of several MS–13 members, including Freddy and Raul Escobar, as witnesses. The government contended that it needed to call the witnesses in order to establish that racketeering activities occurred and were related to the murder. Petitioner argued that the evidence was cumulative. The objection was overruled and the testimony was allowed. On cross-examination, petitioner's counsel thoroughly examined the witnesses' potential biases, including Freddy Escobar's agreement to plead guilty to one count and to testify against petitioner in exchange for dismissal of the other two counts with which he was charged. Because Freddy and Raul Escobar spoke only Spanish, some confusion resulted when defense counsel proceeded with cross-examination by making statements and waiting for the witness to confirm or deny the veracity of those statements. Thus, the Court instructed defense counsel to ask the witnesses questions—rather than make statements—in order to ameliorate the interpretive problem. Only the form—and not the scope—of the examination was limited by this instruction.

When the government rested, petitioner's counsel moved for a judgment of acquittal pursuant to Rule 29, Fed.R.Crim. P., on the ground that the government had failed adequately to show that the murder was in aid of racketeering activity. The motion was denied in a bench ruling that the government had adduced sufficient evidence for a reasonable jury to conclude that the murder was committed in aid of racketeering activity. Petitioner's counsel then indicated that petitioner would not testify in his own behalf. The Court thereupon undertook to examine petitioner in order to ascertain whether his decision not to testify was knowing and voluntary. The voir dire included the following exchange:

> THE COURT: Now, have you discussed whether or not you should testify with your attorneys?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you understand that you have a right not to testify, if you choose not to do so?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you understand that you have right [sic] to testify, if you chose [sic] to do so?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is there anything that you don't understand about your right to testify or not to testify, and what the consequences are of those choices?
>
> THE DEFENDANT: Yes.
>
> THE COURT: What is it you don't understand?
>
> THE DEFENDANT: No, everything my attorneys told me is quite clear.
>
> THE COURT: Are you fully satisfied with the advice and counsel you have received from them?
>
> THE DEFENDANT: Yes.

Transcript of Voir Dire, Sept. 26, 2006, at 5–6. The Court concluded, with no objection from either party, that petitioner's decision not to testify was, in fact, knowing and voluntary. Accordingly, he did not testify at trial.

Upon conclusion of the live trial testimony, proposed jury instructions were circulated and argument was heard on the parties' objections. Neither party objected to the use of a routine instruction that jurors draw no adverse inference from petitioner's decision not to testify at trial. Accordingly, the instruction was given. During deliberation, the jury asked the Court, by a written note, to define the phrase "heat of passion" as used in the instructions. In response, the Court provided the jury with a definition of the phrase, and further repeated to the jury the definition of "malice." Petitioner's counsel twice objected to re-reading the "malice" definition because it went beyond the scope of the jury's question and would be prejudicial to petitioner. The objections were overruled, and the malice definition was re-read to the jury. The jury convicted petitioner on all counts.

The probation officer prepared a presentence investigation report ("PSR") and provided it to defense counsel in compliance with Rule 32, Fed.R.Crim.P. On the morning of the sentencing hearing, petitioner's counsel requested a brief continuance to translate and discuss the PSR with petitioner. The request was granted. A few hours later, the hearing was reconvened, and both of petitioner's lawyers represented that they had discussed the PSR with petitioner. Upon being asked by the Court, petitioner represented that he had received an adequate opportunity to have the PSR translated into Spanish and to discuss it with his lawyers "[a] few minutes ago in the cell block." Transcript of Sentencing Hearing, Dec. 15, 2006, at 5. Accordingly, the Court concluded that petitioner had reviewed and discussed the PSR with counsel as required by Rule 32. Petitioner's counsel had only one minor correction to the PSR—it incorrectly stated petitioner's birthday as March 5 instead of March 4. The correction was adopted and sentencing proceeded. Thereafter, petitioner was sentenced to a mandatory sentence of life imprisonment on the murder count; concurrent ten-year sentences on the conspiracy and alien in possession counts; and a consecutive ten-year sentence on the § 924(c) count.

Petitioner, by counsel, timely appealed his conviction and sentence to the Court of Appeals for the Fourth Circuit, where he advanced three arguments, namely (i) that the danger of unfair prejudice outweighed the probative value of government evidence of racketeering acts committed by MS–13 in violation of Rule 403, Fed.R.Civ. P., (ii) that his Sixth Amendment confrontation right was violated because his cross-examination of government witnesses was materially limited by the Court's instruction to counsel, and (iii) that the murder count's statutorily mandated life sentence is unconstitutional under *United States v. Booker*, 543 U.S. 220, 234, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The Fourth Circuit rejected all three arguments and affirmed petitioner's conviction and sentence by unpublished opinion. *See United States v. Baires*, 254 Fed.Appx. 196 (4th Cir. 2007).

Thereafter, on February 11, 2009, petitioner, proceeding *pro se*, filed his motion to vacate his sentence pursuant to 28 U.S.C. § 2255. After being granted two extensions of time, he filed his memorandum in support of his motion on June 8, 2009. In his memorandum, petitioner asserts that his Sixth Amendment right to effective assistance of counsel was violated on seven occasions during pretrial proceedings, during the course of the trial, and on appeal. Specifically, petitioner alleges that his counsel were ineffective for the following reasons:

(i) for failing to notify petitioner of his rights of consular notification under the

"Geneva Convention [sic]"; [4]

(ii) for failing to inform petitioner of his constitutional right to testify in his own behalf and for failing to explain to petitioner why he should not testify at trial;

(iii) for failing to object to an instruction that the jury not draw an adverse inference from petitioner's decision not to testify at trial;

(iv) for failing adequately to cross-examine Freddy Escobar, a government witness, concerning his alleged biases and motives;

(v) for failing, at trial and on appeal, to object to the Court's allegedly erroneous response to a jury question;

(vi) for failing to challenge adequately the sufficiency of the evidence of a racketeering enterprise and of a pattern of racketeering activities; and

(vii) for failing to request more time in order for petitioner to review the PSR prior to sentencing.

For the reasons set forth herein, petitioner's constitutional right to effective assistance of counsel was not violated and accordingly, petitioner's motion to vacate must be denied.

## II.

■■■ A petitioner proceeding under § 2255 must show that his sentence is infirm because (i) it violates the Constitution or laws of the United States, (ii) the sentencing court lacked jurisdiction to impose the sentence, (iii) the sentence exceeds the maximum authorized by law, or (iv) its imposition is predicated on such a fundamental error that allowing it to stand would result in a "complete miscarriage of justice." *See United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); *Hill v. United States*, 368 U.S. 424, 426–27, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).[5]

A § 2255 petitioner asserting that his Sixth Amendment right to effective counsel was violated must show (i) that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms, and (ii) that this deficient performance prejudiced the petitioner in his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Bell v. Evatt*, 72 F.3d 421, 427 (4th Cir.1995). Prejudice in this context requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. In this matter, petitioner alleges that he was ineffectively assisted by counsel in the seven respects described above, and that each of these alleged deficiencies deprived him of his right to a fair trial. Each of the alleged deficiencies shall be separately addressed.

**4.** The Geneva Conventions do not afford criminal defendants a right to consular notification. Instead, it is clear that petitioner is actually referring to the Vienna Convention on Consular Relations, which does require consular notification when a foreign national is arrested. *See* Art. 36, Vienna Convention on Consular Relations, 21 U.S.T. 77 (Dec. 14, 1969).

**5.** Ordinarily, this alleged infirmity must be raised on direct review, or else the claim is procedurally defaulted, and if the claim was not raised on direct review, the procedural default is excused only if the petitioner can show "cause" and "prejudice." *See Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (applying *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), to § 2255 claims). But where, as here, the petitioner advances only claims alleging ineffective assistance of counsel, any procedural default is excused. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)

### A. Right to Consular Notification

██ As discussed above, an ineffective assistance claim requires showing that counsel's failure was objectively unreasonable, and that this failure prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Whether the Sixth Amendment imposes on defense counsel an affirmative obligation to notify a criminal defendant of a right to consular notification under the Vienna Convention on Consular Relations may well be a close question; it is, at the very least, a novel one in this circuit and in others.[6] In any event, this issue need not be decided here, for it is well settled that the first requirement of the ineffective assistance test—objective unreasonableness—need not be addressed if the claim fails on the second prong—prejudice. *See Fields v. Attorney General of Md.*, 956 F.2d 1290, 1297 (4th Cir.1992) (courts need not address objective unreasonableness if there is no prejudice). Because petitioner cannot show that any prejudice resulted from the alleged Vienna Convention violation, his motion to vacate must be denied insofar as it relates to this alleged violation.

██ To begin with, it is axiomatic that the "prejudice" element of the ineffective assistance inquiry is not met where the sole basis for the claim is that counsel failed to assert a meritless objection—even if it was not apparent at the time of trial that the objection was meritless. *See Lockhart v. Fretwell*, 506 U.S. 364, 374, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (O'Connor, J., concurring); *Nix v. Whiteside*, 475 U.S. 157, 186, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986); *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052. Thus, if there is no "reasonable probability" that the underlying Vienna Convention claim would have affected the outcome of trial, petitioner cannot show that he was prejudiced. In this case, the government appears to concede that the Vienna Convention was violated. Law enforcement officers who arrest a national of a foreign country are required to notify a consular representative of the arrestee's country promptly, and yet, it is undisputed that the government did not notify the El Salvadoran consulate of petitioner's arrest for two months. *See* Art. 36, Vienna Convention on Consular Relations, 21 U.S.T. 77 (Dec. 14, 1969).

That a Vienna Convention violation occurred is one matter; that an arrestee has an "individually enforceable right" to consular notification is another matter altogether, and the answer to this latter question is far from clear.[7] Yet, even assuming, *arguendo*, that the Vienna Convention creates an individually enforceable right to consular notification, and assum-

---

**6.** The question requires fresh evaluation particularly in light of the Supreme Court's recent decision in *Padilla v. Kentucky*, —— U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), in which it held that an attorney is unconstitutionally ineffective when he or she fails to inform the defendant-client that conviction would carry a risk of deportation. In any event, because it is clear that petitioner was not prejudiced by his counsel's failure to advise him of his Vienna Convention rights, the question is neither reached nor decided here.

**7.** *See Medellin v. Dretke*, 544 U.S. 660, 663, 125 S.Ct. 2088, 161 L.Ed.2d 982 (2005) (per curiam) (declining to address question); *United States v. Jimenez–Nava*, 243 F.3d 192, 195 (5th Cir.2001) (holding that Vienna Convention does not create individual right to consular notification); *United States v. De La Pava*, 268 F.3d 157, 164–65 (2d Cir.2001) (strongly suggesting same, but denying § 2255 motion on narrower grounds); *But see Breard v. Greene*, 523 U.S. 371, 376, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (noting, in *dicta*, that Vienna Convention "arguably confers on an individual the right to consular assistance following arrest").

ing further that this right was violated by the government's two-month delay in this case, it is nonetheless clear that petitioner cannot show any prejudice from the alleged Vienna Convention violations.[8]

To begin with, no court has held—and petitioner does not suggest—that automatic dismissal of the indictment should result from a Vienna Convention violation.[9] Thus, no prejudice resulted from petitioner's counsel's failure to file a motion to dismiss the indictment as a result of the alleged Vienna Convention violation because this motion would have been denied as meritless. Additionally, although it is at least theoretically possible that in some instances prejudice might result from a Vienna Convention violation because a properly notified consulate would have provided additional resources to assist in its national's criminal defense, that simply is not the case here. The El Salvadoran Consulate was notified of petitioner's arrest eight months prior to petitioner's trial, more than ample time for the Consulate to provide investigative, translative, or other pretrial assistance had it chosen to do so. Yet, this record reflects that no efforts were undertaken by the El Salvadoran government to communicate with petitioner or assist him in any way. Moreover, petitioner was provided with two experienced criminal defense attorneys as well as translators and investigators pursuant to the Criminal Justice Act, 18 U.S.C.

§ 3006A. He does not identify any deficiencies in his defense apart from the meritless ineffective assistance claims addressed here. There is, therefore, no "reasonable probability" that the outcome of trial would have been different had the Vienna Convention violation not occurred. Accordingly, no prejudice resulted from any alleged violation, and none resulted from any failure by petitioner's counsel to raise the violation or to notify him of his consular right. Thus, because petitioner does not show that any prejudice resulted from the alleged Vienna Convention violation, the motion to vacate his sentence must be denied in this regard.

## B. Right to Testify at Trial

Petitioner alleges that both of his counsel were unconstitutionally ineffective in failing "properly" to inform him of his constitutional right to testify in his own defense at trial. Petitioner alleges that his counsel "decided he would not take the stand" without advising him that the choice was ultimately his to make. One of petitioner's trial counsel, Lana M. Manitta, disputes petitioner's account, stating in an affidavit that petitioner was explicitly advised on two separate occasions "that it was his choice to make," and that the ultimate decision not to testify was made by petitioner upon consideration of "the state of the evidence and the defense strategy." Gov't Ex. 2 at ¶ 4. Moreover, peti-

---

**8.** *See Breard,* 523 U.S. at 377, 118 S.Ct. 1352 ("[I]t is extremely doubtful that the [Vienna Convention] violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial.") (citing *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)); *see also Medellín,* 544 U.S. at 665 n. 3, 125 S.Ct. 2088 (citing *Breard* ).

**9.** *See De La Pava,* 268 F.3d at 165–66 (holding that any individual right to consular notifica-

tion is not a "fundamental right" whose violation warrants dismissal of indictment); *United States v. Page,* 232 F.3d 536, 540–41 (6th Cir.2000) (same); *United States v. Cordoba-Mosquera,* 212 F.3d 1194, 1195–96 (11th Cir. 2000) (same); *United States v. Li,* 206 F.3d 56, 61–62 (1st Cir.2000) (same). *Cf. Sanchez-Llamas v. Oregon,* 548 U.S. 331, 348–50, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006) (holding that Vienna Convention violation does not trigger exclusionary rule).

tioner's allegation directly contradicts his own solemn declarations in court during his trial. Because it is plain from the record that petitioner cannot satisfy either *Strickland* prong—objective unreasonableness and prejudice—summary dismissal of this claim is warranted.

■ To be sure, defense counsel have an unflagging obligation to inform defendants of their fundamental constitutional right to testify, or not to testify. *See Rock v. Arkansas*, 483 U.S. 44, 49–53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Thus, if there is any legitimate dispute as to whether petitioner knew of his right to testify at trial, an evidentiary hearing is ordinarily warranted to resolve that dispute. Yet, no hearing is warranted here because it is well settled that "[s]olemn declarations in open court carry a strong presumption of verity," and that representations of the defendant in a colloquy "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Put another way, when a collateral claim for relief directly contradicts the petitioner's prior in-court representations, summary dismissal is ordinarily warranted absent "extraordinary circumstances" because the allegations are "so palpably incredible, [or] so patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir.2005) (quoting *Blackledge*, 431 U.S. at 76, 97 S.Ct. 1621). Because petitioner's claim here directly contradicts his own declarations to the Court, and because no "extraordinary circumstances" exist that would cast doubt on the veracity of those declarations, the allegation that his counsel

failed to inform him of his right to testify is "palpably incredible" and thus dismissal is warranted. *Id.*

During the trial of this matter, at the close of the government's case, petitioner's counsel indicated that petitioner would not testify. The Court thereupon conducted a voir dire of petitioner to determine whether his waiver of his right to testify was knowing and voluntary. Accordingly, petitioner was asked if he understood that he had a right to testify on his own behalf at trial. He answered, "Yes." Upon further questioning, he further agreed that he had discussed the matter of whether he should testify with his attorneys, that they had explained everything clearly, and that he was fully satisfied with their advice and counsel. Accordingly, the Court found that his waiver of his right to testify was knowing and voluntary. Petitioner now suggests, vaguely, that he was confused and did not fully understand the Court's questions. But the record is clear, and there is no reason to believe that petitioner was confused or untruthful when he declared to the Court at trial that his counsel had informed him of his right to testify.[10]

■ Additionally, petitioner cannot show that *Strickland's* prejudice requirement is met because he was clearly informed of his right to testify during his colloquy with the Court. At that point, the defense had not yet begun to present its case and thus petitioner had sufficient time to decide to testify in his own behalf. This notification therefore cured any hypothetical failure by counsel to inform him of his right to testify. Accordingly, because petitioner's allegation that he was not informed of his right to testify is not credi-

---

10. It should be noted that during the colloquy with the Court, petitioner initially answered "yes" to a question to which it appears that his intended answer was "no." But he corrected himself upon being prompted to elabo-

rate, and this momentary mistake is not a basis to conclude that petitioner did not understand the gravamen of the entire line of questioning.

ble, and further because no prejudice could have resulted from any deficiency, the motion to vacate must be denied in this regard.

### C. "No Adverse Inference" Instruction

 Petitioner next alleges that his counsel was unconstitutionally ineffective in failing to object to the instruction that the jury draw *no* adverse inference from the decision not to testify. He claims that this instruction was a "direct adverse comment[ ]" about the choice violative of the Fifth Amendment. The instruction in issue, as read from the bench, is as follows:

> Now, in a criminal case, the defendant has an absolute right under the Constitution not to testify. The fact that the defendant did not testify must not be discussed or considered by the jury in any way when deliberating on and in arriving at your verdict. No inference of any kind may be drawn from the fact that the defendant decided to exercise his privilege under the Constitution and did not testify.
>
> As stated before, the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or presenting any evidence.

Transcript of Jury Instructions, Sept. 26, 2006, at 125. This instruction was not "adverse" to petitioner in any way. To the contrary, this standard instruction is routinely given in order to *protect* a criminal defendant from the possibility that jurors will draw an adverse inference or otherwise improperly discuss the defendant's decision not to testify at trial. While there may be some room for disagreement among criminal defense attorneys as to whether and in what circumstances the instruction is helpful to a defendant, this is purely a question of trial strategy appropriately left to the discretion of counsel in consultation with their client. *See Strick-*

*land,* 466 U.S. at 689, 104 S.Ct. 2052 (noting that collateral proceedings may not be used to challenge objectively reasonable trial strategy). It is, in any event, certain that giving the instruction did not violate petitioner's constitutional rights, and counsel did not fall below an objective standard of reasonableness in deciding not to object to it. Accordingly, because petitioner does not satisfy the first prong of *Strickland,* the motion to vacate must be denied on this issue.

### D. Cross–Examination of Freddy Escobar

██ Petitioner next argues that his trial counsel were unconstitutionally ineffective in failing adequately to cross-examine Freddy Escobar, a key government witness, about his potential biases and motives. Specifically, while petitioner acknowledges that his attorney, Nina J. Ginsberg, "attempted to show the jury that Escobar had 'motivation' or 'bias' for his testimony, she failed to explore the full measure" of his bias, namely his "trade" of a reduction from life imprisonment to ten months' in exchange for his testimony against petitioner.

Petitioner's claim is refuted by the trial record, which shows that Ms. Ginsberg cross-examined Mr. Escobar at great length about his biases, motives, and prior inconsistent statements. She elicited from Mr. Escobar (i) that he had lied to law enforcement officers; (ii) that he had intended to kill the victim of the murder with which petitioner was charged; and (iii) that in exchange for his testimony the government had agreed to dismiss three counts against him. Ms. Ginsberg further directly asked Mr. Escobar whether the charge carrying a mandatory life sentence was dropped pursuant to the plea agreement that required his testimony. He answered "yes." She then asked him if the

remaining charge, to which he pled guilty, carried a ten year maximum sentence; again, Mr. Escobar answered in the affirmative. Transcript of Trial, Sept. 25, 2006, at 54–55. These questions elicited precisely the information petitioner alleges Ms. Ginsberg failed to elicit. Thus, it is plain from the record that Ms. Ginsberg's cross-examination of Mr. Escobar was objectively reasonable, indeed thorough. Accordingly, the motion is appropriately denied in this respect.

Petitioner also alleges that his counsel failed "to press" the alleged Confrontation Clause violation resulting from the Court's limits to the form of counsel's questions to Mr. Escobar. But counsel raised this issue at the time, and then again on appeal. The argument was rejected during trial and again by the Court of Appeals, which held that there was no Confrontation Clause violation. Petitioner's counsel could have done no more to raise the issue and pursue it diligently. Accordingly, counsel's efforts were objectively reasonable in this regard.

### E. Response to Jury Question

Petitioner alleges that his counsel were ineffective in (i) inadequately objecting to the Court's decision to re-read the "malice" instruction to the jury in connection with answering a question about the definition of "heat of passion," and (ii) in abandoning the issue on appeal. It is again clear that counsel's strategic choices were objectively reasonable in this regard. First, during trial, defense counsel twice objected to re-reading the "malice" instruction because it exceeded the scope of the jury's question and might prejudice the defense. The objections were overruled. Defense counsel could not have done any more to raise or argue the matter at the district court and thus their performance was not objectively unreasonable in this regard.

Second, defense counsel soundly exercised their discretion in deciding not to raise the malice instruction issue on appeal. There is no dispute that the malice instruction was legally correct, and thus there was no error in re-reading it insofar as it was related to the jury's question. Trial counsel are not required to raise every possible argument on appeal, as doing so would have the unwanted result of "burying good arguments ... in a verbal mound made up of strong and weak contentions." *Jones v. Barnes*, 463 U.S. 745, 753, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (emphasizing that appellate counsel need not raise every nonfrivolous issue, but rather only those most likely to succeed). It appears that petitioner's counsel decided, as a matter of sound appeal strategy, not to press an issue on which the likelihood of reversal may charitably be described as remote. Put differently, this is by no means a "serious error" rising to the level of unconstitutionally ineffective counsel. Accordingly, the motion is appropriately denied with respect to this issue.

### F. Sufficiency of Evidence of Racketeering Enterprise and Pattern of Racketeering

Petitioner further alleges that his counsel failed to challenge the sufficiency of the evidence that he was a member of a "RICO enterprise" and that there was a pattern of racketeering activity under RICO. In this regard, it is clear that *Strickland's* first requirement is not met, as counsel's decisions were objectively reasonable. At trial, substantial evidence was adduced that the enterprise—MS–13—had engaged in drug trafficking and murders, both qualifying racketeering acts under the statute. In light of this substantial evidence, any motion for ac-

quittal due to insufficient evidence of racketeering activities would have been denied as meritless. Indeed, the evidence of these racketeering acts was so overwhelming that counsel decided, on appeal, that petitioner's best argument was that the evidence of racketeering activities was cumulative and unfairly prejudicial. This appeal strategy was objectively reasonable. At trial, petitioner's counsel further argued, in a Rule 29 motion, that there was inadequate evidence of a nexus between the racketeering acts and the alleged murder. This motion was denied by bench ruling, and petitioner's counsel did not raise the matter on appeal. In light of the ample evidence of petitioner's MS–13 activities, and the connection of the alleged murder to these activities, the strategic choice not to raise the nexus issue on appeal was objectively reasonable. *Jones v. Barnes*, 463 U.S. at 753, 103 S.Ct. 3308.

### G. Time to Review Presentence Report

 Finally, petitioner alleges that his counsel were deficient in failing to object to the limited amount of time that he was afforded to review the PSR prior to his sentencing. This argument, too, fails as neither *Strickland* prong is met. First, counsel's conduct was objectively reasonable. On the morning of the sentencing hearing, his counsel requested a brief continuance to translate the PSR into Spanish and discuss it with him. The request was granted. When the sentencing hearing reconvened a few hours later, both of petitioner's attorneys represented that they had received an adequate opportunity to translate the PSR into Spanish for petitioner and to review it with him. The Court then directly asked petitioner whether he had received an adequate opportunity to review the PSR with his counsel, and petitioner indicated that he had received such an opportunity "[a] few min-

utes ago in the cell block." Tr. at 5. It is clear that petitioner's allegation, which allegation is contrary to these prior in-court declarations, is not credible. *See Lemaster*, 403 F.3d at 221. Moreover, Rule 32, Fed.R.Crim.P., is not violated simply because petitioner's opportunity for review and discussion of the PSR with his counsel arose in the courthouse cell block immediately prior to the sentencing hearing. The critical requirement is that the sentencing court ascertain that "a defendant has had the opportunity to read and discuss the [PSR] with his counsel." *United States v. Miller*, 849 F.2d 896, 897–98 (4th Cir.1988). Whether that opportunity arose immediately prior to hearing or a month before is of no moment, as long as the opportunity was adequate. There is no basis in this record to conclude that the opportunity was anything but adequate. Indeed, petitioner—and his counsel—indicated that he received an adequate opportunity to review the PSR, and that is sufficient to satisfy Rule 32's procedural requirement. Moreover, petitioner does not identify any errors in the PSR or any other prejudice that would have been avoided had he been afforded additional time to review the PSR. Accordingly, counsel's conduct was objectively reasonable and petitioner was not prejudiced by any of counsel's conduct at sentencing. The motion to vacate must therefore be denied.

### III.

Accordingly, for the reasons stated herein, and for good cause,

It is hereby **ORDERED** that petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 is **DENIED.**

Should petitioner wish to appeal this Order, he must do so by filing a written notice of appeal within sixty (60) days, pursuant to Rules 3 and 4, Fed. R.App. P.

A certificate of appealability will not issue for claims addressed by a district court absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to meet this standard, a petitioner must demonstrate that reasonable jurists would find both (i) that the district court's assessment of her constitutional claims is debatable or wrong and (ii) that any dispositive procedural rulings rendered by the district court are also debatable or wrong. *See Miller–El v. Cockrell,* 537 U.S. 322, 336–38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *Rose v. Lee,* 252 F.3d 676, 683 (4th Cir.2001).

For the reasons set forth above, and because petitioner has failed to make "a substantial showing of the denial of a constitutional right" with respect to his § 2255 claims,

It is hereby **ORDERED** that a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) is **DENIED.**

The Clerk is directed to send a copy of this Order to the *pro se* petitioner and all counsel of record, and to place the matter among the ended causes.